IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JECKLAINE BORRERO,

                Plaintiff,

-vs-

FREDERICK J. HANNA & ASSOCIATES, P.C.
and JOHN DOE
                Defendants.
_____/

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR UNLAWFUL DEBT COLLECTION PRACTICES AND DEMAND FOR JURY TRIAL

### I.   Introduction

1. This is an action for damages brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et. seq. (hereafter "FDCPA") and the Florida Consumer Collection Practices Act, F.S.A. §559.72 (hereafter "FCCPA"). These laws prevent debt collectors from *inter alia*, engaging in abusive, deceptive, and unfair collection practices.

### II.   Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. §1331, 1337.
3. Venue lies in this District pursuant to 28 U.S.C. §1391(d).

### III.   Parties

4. Plaintiff Jecklaine Borrero, (hereafter "Plaintiff) is an individual residing at 7716 Carriage Pointe Drive, Gibsonton, Florida 33534.
5. Defendant Frederick J. Hanna & Associates, P.C. (hereafter "FJH") is a for-profit Georgia professional corporation, with its principle place of business located at 1427 Roswell Road, Marietta, Georgia, 30062. The principle purpose of Defendant is the collection of debts, using the mail and telephone, and Defendant regularly attempts to collect debts alleged to be due to another.

6. Defendant John Doe, a/k/a "Victor Webbs", (hereafter "Victor Webbs" or "Mr. Webbs") is an individual employee and/or agent of Defendant and regularly attempts to collect debts alleged to be due to another.

### IV. Factual Allegations

*Background*

7. On or about September 10, 2009, Plaintiff received a collection letter from Defendant FJH.
8. The letter advised Plaintiff that Defendant FJH was collecting a debt allegedly owed to FIA Card Services.
9. The alleged debt was owed from Plaintiff's use of a Bank of America credit card for personal, family and/or household purposes and is therefore a "consumer debt" as defined by 15 U.S.C. §1692(a).
10. On or about September 12, 2009, Plaintiff received a telephone call from her mother-in-law.
11. Plaintiff's mother-in-law informed her that Defendant FJH had been calling her home numerous times looking for Plaintiff.

*September 21st Communication*

12. On or about September 21, 2009, Plaintiff contacted Defendant FJH by phone.
13. Plaintiff spoke to a female representative who demanded to know how soon she could pay the alleged debt.
14. Plaintiff advised that she currently had no money to pay the balance on the account, but that she could pay a portion of the debt once she received her next paycheck.
15. Plaintiff further indicated her interest in entering into a payment arrangement with Defendant FJH.
16. The representative of Defendant FJH said that Plaintiff had to make a $531.00 payment immediately.
17. Plaintiff advised the representative that she did not get paid until October 1, 2009.
18. The representative asked if there was anyone Plaintiff could borrow money from.
19. Plaintiff responded that she did not know anyone who would loan or give her the money to pay the balance.
20. At that point, the representative accused Plaintiff of refusing to cooperate and not being responsible.

21. Plaintiff responded that she was not refusing to cooperate, but that she did not have the money available to pay at that time.
22. The representative threatened Plaintiff that "legal action" would be taken against her if she did not pay $531.00 immediately.
23. Plaintiff told the representative that she would like to contact her husband and call Defendant FJH afterwards.
24. At that point, Plaintiff heard a man in the background talking to the representative and advising her on what to say.
25. The man told the representative not to let Plaintiff off the phone.
26. Plaintiff was becoming very nervous and asked the representative why someone was advising her of what to say.
27. The representative told Plaintiff that her manager was "helping her with calls."
28. The representative again tried to pressure Plaintiff into making a payment and refused to let Plaintiff hang up the phone so she could call and consult with her husband.
29. The representative suggested that Plaintiff authorize a post-dated check over the phone.
30. The representative assured Plaintiff that the check would not be deposited until September 30, 2009.
31. Plaintiff continued to hear the voice of a man giving the representative instructions.
32. Plaintiff told the representative that she was nervous about authorizing a post-dated check that she felt as though she was being tricked by Defendant.
33. At that point, the manager picked-up the phone and identified himself as "Victor Webbs".
34. Defendant Victor Webbs began yelling at Plaintiff and asked her what her problem was.
35. Further, Defendant Webbs said that they were only trying to help Plaintiff but she kept accusing the representative of being incompetent.
36. Plaintiff said that she never called the representative incompetent, but that she just did not have the money available to make a payment.
37. Defendant Webbs continued to yell at Plaintiff, and said, "You did this to yourself."
38. Plaintiff told Defendant Webbs that he did not have to yell at her, and that he was being very disrespectful.

39. Defendant Webbs responded that Defendant FJH is a collection agency, not customer service, and that he did not need to be nice to her.
40. Defendant Webbs further stated to Plaintiff, "You owe us money! You have no rights!"
41. Plaintiff felt extremely dejected, and advised that she may have to look for other options, including the possibility of filing for bankruptcy.
42. Defendant Webbs began laughing at Plaintiff, and deceptively said that if she filed bankruptcy, she would lose everything she owned.
43. Further, Defendant Webbs falsely asserted that Plaintiff would lose her home if she filed bankruptcy.
44. Plaintiff became so upset she began to cry.
45. Defendant Webbs continued to threaten Plaintiff and told her that the only way she could prevent Defendant from taking legal action against her would be for her to authorize a check over the phone.
46. Plaintiff, fearing Defendant would still pursue legal action against her even if she authorized the post-dated check, asked that Defendant send her an agreement in writing for her review, and then she would write the check.
47. Defendant Webbs refused to send her an agreement to review and again advised that authorizing a post-dated check over the phone was the only way to prevent legal action.
48. Plaintiff asked for reassurance that the check would not be cashed before September 30, 2009.
49. Defendant assured Plaintiff that the check would not be cashed until then, but, once again, reiterated that he needed payment over the phone to stop legal action.
50. Plaintiff felt confused, frightened, scared and thought she had no other options available.
51. Desperate to end the phone call and to stop the threats, and due to the fear of legal action, Plaintiff reluctantly gave Defendant FJH the information needed to draft the post-dated check.
52. After the phone call, Plaintiff continued to cry and was so upset over the incident that she even vomited.
53. Further, Plaintiff had trouble sleeping at night as she continued to think of Defendant Webbs threats.

*Defendant's Unauthorized Cashing of Postdated Check*

54. Later that week, on September 25, 2009, Plaintiff tried to purchase medication for one of her daughters at a pharmacy with her debit card.

55. However, Plaintiff's debit card was declined.

56. When she returned home that evening, Plaintiff reviewed her bank account online and realized that her account had a negative balance because the post-dated check was cashed prematurely by Defendant FJH.

57. When Plaintiff printed out the check from the online access to her bank account, she noticed that the date on the check was September 15th, 2009.

58. The September 15th, 2009 date written on the check was fraudulently produced, as Plaintiff's first contact with Defendant FJH was six days later, on September 21, 2009.

59. Plaintiff incurred a total of $210.00 of overdraft fees due to the check being cashed before the date Plaintiff authorized.

60. The next morning, Plaintiff contacted Defendant FJH and spoke to Defendant Webbs.

61. Plaintiff informed Defendant Webbs that Defendant FJH had deposited the check before it was authorized.

62. Defendant Webbs said that FJH would refund the overdraft fees if Defendant FJH had in fact cashed the check prematurely.

63. When Plaintiff questioned Defendant Webbs about the date on the check, Defendant Webbs said, "I have no explanations for you" and abruptly hung-up the phone.

64. Plaintiff again attempted to contact Mr. Webbs later that week, but was not able to get through to him.

65. Plaintiff did receive a check from Defendant FJH in the amount of $105.00 which represents only half of the overdraft fees she actually incurred.

*Conclusion*

66. Defendants' acts of calling Plaintiff's mother-in-law numerous time, threatening legal action when no action was intended, falsely representing that Plaintiff had no legal rights, using abusive and harassing language, and depositing a post-dated check before it was authorized were intentional actions which were calculated to coerce and compel Plaintiff into paying a consumer debt.

67. As a result of Defendants' harassing and abusive conduct, Plaintiff has incurred actual damages, including, but not limited to, overdraft fees in the amount of $105.00, sleeplessness and nausea and she had feelings of helplessness, nervousness, and anxiety.

### First Claim for Relief
### FDCPA Violation
### Jecklaine Borrero v. Frederick J. Hanna & Associates

68. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 67.
69. The foregoing acts and omissions of Defendant FJH and its agents constitute numerous and several violations of the FDCPA, including, but not limited to 15 U.S.C. §§1692b(3), 1692d, 1692d(2), 1692e, 1692e(5), 1692e(10), 1692f, 1692f(2) and 1692f(4).
70. As a result if the above violations of the FDCPA, Defendant FJH is liable to Plaintiff for Plaintiff's actual damages, statutory damages, costs and attorney's fees.

### Second Claim for Relief
### FCCPA Violation
### Jecklaine Borrero v. Frederick J. Hanna & Associates

71. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 67.
72. The foregoing acts and omissions of Defendant FJH and its agents constitute numerous and several violations of the FCCPA, including, but not limited to F.S.A. §§559.72(7) and 559.72(8).
73. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.
74. As a result of the above violations of the FCCPA, Defendant FJH is liable to Plaintiff for actual damages, statutory damages, punitive damages and attorney's fees and costs.

### Third Claim for Relief
### FDCPA Violation
### Jecklaine Borrero v. John Doe

75. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 6 and 12 through 67.
76. The foregoing acts and omissions of Defendant John Doe constitute numerous and several violations of the FDCPA, including, but not limited to 15 U.S.C. §§1692d, 1692d(2), 1692(e), 1692e(5), 1692e(10), 1692f and 1692f(2).

77. As a result if the above violations of the FDCPA, Defendant John Doe is liable to Plaintiff for Plaintiff's actual damages, statutory damages, costs and attorney's fees.

### Fourth Claim for Relief
### FCCPA Violation
### Jecklaine Borrero v. John Doe

78. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 6 and 12 through 67.

79. The foregoing acts and omissions of Defendant John Doe constitute numerous and several violations of the FCCPA, including, but not limited to F.S.A. §§559.72(7) and 559.72(8).

80. The actions of Defendant John Doe were done with the intent to coerce Plaintiff into paying a consumer debt.

81. As a result of the above violations of the FCCPA, Defendant John Doe is liable to Plaintiff for Plaintiff's actual damages, statutory damages, punitive damages and attorney's fees and costs.

WHEREFORE, PLAINTIFF respectfully prays that judgment be entered against DEFENDANTS for the following:

a. Actual damages pursuant to 15 U.S.C. §1692k and F.S.A §559.77(2);

b. Statutory damages pursuant to 15 U.S.C. §1692k and F.S.A. §559.77(2);

c. Punitive damages pursuant to F.S.A. §559.77(2);

d. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k and §559.77(2); and

e. For such other and further relief as may be just and proper.

Dated: January 28, 2010          Respectfully submitted,

THE GOLDEN LAW GROUP
213 N. Parsons Avenue
Brandon, FL 33510
Tel: (813) 413-8700
Fax: (813) 413-8701

_____
☐ G. DONALD GOLDEN, ESQUIRE
Florida Bar No.: 0137080
Don@BrandonLawyer.com
☐ JAMES W. ELLIOTT, ESQUIRE

Florida Bar No.: 0040961
James@BrandonLawyer.com
JOSEPH B. BATTAGLIA, ESQUIRE
Florida Bar No.:0058199

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

_____
G. Donald Golden, Esquire